UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| IN RE: WARNER MUSIC GROUP DATA BREACH | Case No.: 1:20-cv-07473-PGG |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANT WARNER MUSIC GROUP CORP.'S MOTION TO DISMISS
<u>THE FIRST AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTUAL BACKGROUND ................................................................................... 2

LEGAL STANDARD ............................................................................................. 6

ARGUMENT .......................................................................................................... 8

I.  ALLEGATIONS OF REIMBURSED CHARGES AND SPECULATIVE RISK
OF FUTURE HARM DO NOT CONFER ARTICLE III STANDING. ......................... 8

II.  THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A
CLAIM UPON WHICH RELIEF CAN BE GRANTED. ................................. 10

    A.  Plaintiffs Do Not State a Claim for Negligence Because WMG Did Not
Breach Any Duty to Plaintiffs or Harm Them. .................................... 10

        1.  WMG Did Not Have a Special Duty to Stop All Data Breaches in
Connection with Routine Online Shopping Transactions. ...................... 11

        2.  Plaintiffs Cannot Rely on the Occurrence of a Security Incident
Alone to Support the Element of Breach. ................................. 12

        3.  Plaintiffs' Allegations of Reimbursed Charges and Speculative
Future Risk Are Not Sufficient to Support an Injury. ............................. 14

        4.  Plaintiffs' Claims Are Barred by Their Contract with WMG and
the Economic Loss Rule. .................................................... 14

    B.  Plaintiffs Fail to State a Claim for Negligent Misrepresentation Because
Plaintiffs Do Not Plead Actionable Representations and Reliance. .................. 15

        1.  WMG's Lock Image and Privacy Policy Statements Are Not
Definite Enough to Support a Negligent Misrepresentation Claim. ........ 15

        2.  Plaintiffs Fail to Allege That They Reasonably Relied on Security-
Related Representations. .................................................... 16

    C.  Plaintiffs' Implied Contract Claim Fails Because They Do Not
Sufficiently Allege Facts to Support the Existence of an Implied Contract,
a Breach of Such Contract, or Damages. ............................................. 18

    D.  Plaintiffs Fail to State a NYGBL Claim Because WMG Did Not Make
Misleading Statements or Tie Security to Its Advertising, and Because
Plaintiffs' Purchases Were Not Defective. ............................................ 19

        1.  Plaintiffs Do Not Allege Materially Misleading Statements, as
Required by NYGBL §§ 349 and 350. .................................... 20

        2.  Plaintiffs' NYGBL § 350 Claim Fails to Allege Advertising. ................. 21

        3.  Both NYGBL Claims Fail Because Plaintiffs Received the Full
Value of Their Purchase. .................................................... 22

# TABLE OF CONTENTS
(continued)

Page

E.    Plaintiffs' CCPA Claim Fails Because No Social Security Numbers (or Similarly Sensitive Information) Were Compromised, and There Is No Basis to Claim That WMG's Security Was Unreasonable. ................................... 22

F.    Plaintiffs' Duplicative Unjust Enrichment Claim Fails Because Plaintiffs Do Not Allege That They Did Not Receive the Full Value of the Goods They Purchased from WMG's Websites. ............................................................ 24

CONCLUSION ................................................................................................................ 25

sf-4524349

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdale v. N. Shore-Long Island Jewish Heath Sys., Inc.*,
  19 N.Y.S.3d 850 (N.Y. Sup. Ct. 2015) ...................................................................20

*Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*,
  404 F.3d 566 (2d Cir. 2005)...................................................................................15

*Ambac Assur. Corp. v. United States Bank Nat'l Ass'n.*,
  328 F. Supp. 3d 141 (S.D.N.Y. 2018)....................................................................14

*Anunziatta v. Orkin Exterminating Co.*,
  180 F. Supp. 2d 353 (N.D.N.Y. 2001) ...................................................................21

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...............................................................................................7, 13

*Balk v. N.Y. Inst. of Tech.*,
  683 F. App'x 89 (2d Cir. 2017) ..........................................................................18 n.6

*Banco Indus. de Venez. v. CDW Direct, L.L.C.*,
  888 F. Supp. 2d 508 (S.D.N.Y. 2012)....................................................................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)..................................................................................................7

*Bildstein v. MasterCard Int'l Inc.*,
  329 F. Supp. 2d 410 (S.D.N.Y. 2004).....................................................................20

*BNP Paribas Mortg. Corp. v. Bank of Am., N.A.*,
  949 F. Supp. 2d 486 (S.D.N.Y. 2013)..........................................................12, 15, 17

*Braynina v. TJX Cos., Inc.*,
  No. 15 Civ 5897 (KPF), 2016 WL 5374134 (S.D.N.Y. Sept. 26, 2016) ..............21, 22 n.7, 22

*Clarex Ltd. v. Natixis Sec. Am. LLC*,
  No. 12 CIV 7908 PAE, 2013 WL 2631043 (S.D.N.Y. June 11, 2013) ...................13

*Cline v. TouchTunes Music Corp.*,
  211 F. Supp. 3d 628 (S.D.N.Y. 2016)......................................................................22

*Corona v. Sony Pictures Entm't, Inc.*,
  No. 14-CV-09600 RGK EX, 2015 WL 3916744 (C.D. Cal. June 15, 2015) ..........14

*Corwin v. NYC Bike Share, LLC,*
    238 F. Supp. 3d 475 (S.D.N.Y. 2017)..............................................................5 n.4

*Cruz v. TD Bank, N.A.,*
    855 F. Supp. 2d 157 (S.D.N.Y. 2012),
    *aff'd and remanded,* 742 F.3d 520 (2d Cir. 2013) ..................................................14

*Daly v. Metro. Life Ins. Co.,*
    782 N.Y.S.2d 530 (N.Y. Sup. Ct. 2004) .........................................................11

*DeBlasio v. Merrill Lynch & Co.,*
    No. 07 Civ 318(RJS), 2009 WL 2242605 (S.D.N.Y. July 27, 2009) ................................16, 17

*Digizip.com, Inc. v. Verizon Servs. Corp.,*
    139 F. Supp. 3d 670 (S.D.N.Y. 2015)..............................................................25

*Doe v. Quest Diagnostics, Inc.,*
    No. 15 CIV. 8992 (LGS), 2017 WL 1102663 (S.D.N.Y. Mar. 23, 2017) .............................6

*ERE LLP v. Spanierman Gallery, LLC,*
    942 N.Y.S.2d 472 (2012) ............................................................................19

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.,*
    375 F.3d 168 (2d Cir. 2004)...........................................................................17

*Excevarria v. Dr Pepper Snapple Grp., Inc.,*
    764 F. App'x 108 (2d Cir. 2019) .....................................................................7

*Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.,*
    314 F.3d 48 (2d Cir. 2002) ...........................................................................21

*Fero v. Excellus Health Plan, Inc.,*
    236 F. Supp. 3d 735 (W.D.N.Y. 2017),
    *on reconsideration,* 304 F. Supp. 3d 333 (W.D.N.Y. 2018).......................................12

*Gardiner v. Walmart Inc.,*
    No. 20-cv-04618-JSW, 2021 WL 2520103 (N.D. Cal. Mar. 5, 2021) .................................23

*Green v. Covidien,*
    No. 18 Civ. 2939, 2021 WL 1198833 (S.D.N.Y. Mar. 30, 2021) ...................................16

*Hammond v. The Bank of N.Y. Mellon Corp.,*
    No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307 (S.D.N.Y. June 25, 2010)....................18

*In re GM LLC Ignition Switch Litig.,*
    No. 14-MD-2543 (JMF), 2016 WL 3920353 (S.D.N.Y. July 15, 2016) ..............................16

*In re Howard's Express, Inc.*,
   151 F. App'x 46 (2d Cir. 2005) .................................................................24 n.9

*Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*,
   553 F. App'x 37 (2d Cir. 2014) .........................................................................19

*Jantzer v. Elizabethtown Cmty. Hosp.*,
   No. 8:19-cv-00791 (BKS/DJS), 2020 WL 2404764 (N.D.N.Y. May 12, 2020) ....................10

*In re JetBlue Airways Corp. Privacy Litig.*,
   379 F. Supp. 2d 299 (E.D.N.Y. 2005) .................................................................25

*In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*,
   383 F. Supp. 3d 187 (S.D.N.Y. 2019) .............................................................21 n.8

*Kimmell v. Schaefer*,
   89 N.Y.2d 257 (1996) ....................................................................................17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992)........................................................................................7

*Maag v. U.S. Bank, Nat'l Ass'n*,
   No. 3:21-cv-00031-H-LL, ECF No. 25 (Order Granting Def.'s Mot. to
   Dismiss) (S.D. Cal. Apr. 8, 2021) ..................................................................24

*Mandarin Trading Ltd. v. Wildenstein*,
   919 N.Y.S.2d 465 (2011).................................................................................25

*Marshall v. Hyundai Motor Am.*,
   334 F.R.D. 36 (S.D.N.Y. 2019) .......................................................................20

*Molnar v. 1-800-Flowers.com, Inc.*,
   No. CV 08-0542 CAS, 2008 WL 4772125 (C.D. Cal. Sept. 29, 2008)..............................5 n.4

*Murphy v. Twitter, Inc.*,
   274 Cal. Rptr. 3d 360 (Ct. App. 2021)..............................................................16

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016)..........................................................................3 n.1

*Pica v. Delta Air Lines, Inc.*,
   No. CV 18-2876-MWF (EX), 2018 WL 5861362 (C.D. Cal. Sept. 18, 2018)......................13

*Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*,
   507 F.3d 117 (2d Cir. 2007)...........................................................................7

*Razuki v. Caliber Home Loans, Inc.*,
   No. 17CV1718-LAB (WVG), 2018 WL 6018361 (S.D. Cal. Nov. 15, 2018) ................13, 24

*Shafran v. Harley-Davidson, Inc.*,
No. 07 Civ. 01365 (GBD), 2008 WL 763177 (S.D.N.Y. Mar. 20, 2008) .............................10

*Shovak v. Long Island Com. Bank*,
858 N.Y.S.2d 660 (N.Y. App. Div. 2008) ...............................................................................20

*Sitt v. Nature's Bounty, Inc.*,
No. 15-CV-4199 (MKB), 2016 WL 5372794 (E.D.N.Y. Sept. 26, 2016).............................25

*Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*,
131 N.Y.S.3d 817 (N.Y. Sup. Ct. 2020) ..................................................................................19

*In re SuperValu, Inc.*,
925 F.3d 955 (8th Cir. 2019) ...................................................................................................24

*Tasini v. AOL, Inc.*,
851 F. Supp. 2d 734 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012)................21, 24

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021)..............................................................................................................10

*Trikas v. Universal Card Servs. Corp.*,
351 F. Supp. 2d 37 (E.D.N.Y. 2005) .......................................................................................19

*Tuosto v. Philip Morris USA Inc.*,
No. 05 Civ. 9384 (PKL), 2007 WL 2398507 (S.D.N.Y. Aug. 21, 2007) ...............................16

*Venezia v. Luxoticca Retail N. Am. Inc.*,
No. 12 Civ. 4467 (RJS), 2015 WL 5692146 (S.D.N.Y. Sept. 28, 2015).................................18

*W. Intermodal Servs. Ltd. v. Singamas Container Indus. Co.*,
No. 98 Civ. 8275 (RPP), 2000 WL 343780 (S.D.N.Y. Mar. 31, 2000)...................................11

*Whalen v. Michael Stores Inc.*,
153 F. Supp. 3d 577 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017)........................8

*Whalen v. Michaels Stores, Inc.*,
689 F. App'x 89 (2d Cir. 2017) ..........................................................................................6, 10

*Willey v. J.P. Morgan Chase, N.A.*,
No. 09 Civ. 1397 (CM), 2009 WL 1938987 (S.D.N.Y. July 7, 2009)....................................12

*Zaccagnino v. Nissan N. Am., Inc.*,
No. 14-CV-3690 (LLS), 2015 WL 3929620 (S.D.N.Y. June 17, 2015)..................................15

**Statutes**

Cal. Civ. Code § 1798.81.5(d)(1)(A) ................................................................................23

Cal. Civ. Code § 1798.150 ................................................................................................22

Defendant Warner Music Group Corp. ("WMG") moves to dismiss the First Amended Consolidated Class Action Complaint (ECF No. 74, the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction based on Plaintiffs' failure to allege Article III standing, and pursuant to Federal Rule of Civil Procedure 12(b)(6) based on Plaintiffs' failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiffs are consumers who made online purchases at various e-commerce websites for WMG artists and later received a data security incident notification from WMG that informed all potentially affected consumers of the incident.  Based on this notification, Plaintiffs assume, and ask the Court to assume, that WMG did not maintain reasonable security procedures in violation of various contracts, California and New York statutes, and alleged common law duties.  Yet the FAC contains no factual allegations suggesting that the security measures WMG had in place at the relevant times breached any duty owed to Plaintiffs.

WMG's initial motion to dismiss highlighted multiple flaws in Plaintiffs' negligence theory, but chief among them was that a negligence claim cannot be based on the mere fact that WMG sent Plaintiffs a notice of a security incident.  The FAC does not cure this deficiency. Instead, the FAC adds descriptions of articles and blog posts advertising security products.  It also broadly references industry and Federal Trade Commission general data security guidance. These materials do not address the flaw in Plaintiffs' theory: they still cannot plausibly allege that WMG owed them a duty, much less deviated from any applicable "guidance."

Indeed, the commentary Plaintiffs reference explains that the type of attack WMG is alleged to have suffered, referred to as a "Magecart" attack, is "nearly impossible" to detect and affects millions of websites, even when "fully patched."  This does not plausibly allege

negligence on WMG's part.  On the contrary, that WMG identified and stopped an attack that is so rarely detected, as Plaintiffs' own allegations concede, supports the inference that WMG's security was more than reasonable.  The FAC alleges no defect in WMG's data security. Plaintiffs allege only notice of a security incident that affects even "fully patched . . . systems" across "over two million websites" despite victims' best mitigation efforts.  It is well settled that the mere allegation that an intrusion occurred does not create a *prima facie* negligence claim.

Plaintiffs' conclusory allegations that WMG misrepresented its security practices to customers also fail, as they lack the requisite particularity (pursuant to Federal Rule of Civil Procedure 9(b) and this Circuit's precedent) to plead misrepresentation under Plaintiffs' theories of negligence, implied contract, and New York General Business Law ("NYGBL").  Nor do Plaintiffs plead sufficient facts to show that they relied on any of WMG's representations about security in making their purchases of music or music-related merchandise.

Finally, Plaintiffs do not establish that they suffered harm or are at risk of possible future harm.  Plaintiffs do not actually allege that they lost any unreimbursed funds, and none allege any reasonable basis to fear future harm beyond subjective speculation—and Plaintiffs' latest amendment offers no additional detail on this point.  As such, Plaintiffs fail to allege an injury-in-fact that is sufficient for Article III standing.  For all of these reasons, the Court should dismiss the FAC under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## **FACTUAL BACKGROUND**

Plaintiffs allege that they used their credit cards to buy merchandise from WMG's artist websites between April 25, 2020 and August 5, 2020.  (FAC ¶¶ 14–27.)  Plaintiffs further allege that "on or about September 3, 2020," Plaintiffs received a notice informing them that WMG suffered a security incident.  (*Id.* ¶ 48.)  Specifically, the notice stated that "an unauthorized third

party[,]" through "an external service provider[,] . . . allowed the unauthorized third party" to "potentially acquire" personal information entered on websites that "WMG operates but that are hosted and supported by an external service provider" during the time period "between April 25, 2020 and August 5, 2020." (*Id.*)  WMG's notice stated that the data security incident "potentially" involved information submitted "after placing an item in your shopping cart," which "could have included" Plaintiffs' "name, email address, telephone number, billing address, shipping address, and payment card details (card number, CVC/CVV and expiration date)." (*Id.*)  WMG's notice did not state that any social security numbers or similarly-sensitive information had been compromised.  (*Id.*)

According to documents that Plaintiffs incorporate by reference into the FAC, Plaintiffs allege that the type of attack they claim WMG suffered "infected over 2 million websites" in 2019 and is "nearly impossible . . . to identify" with "[t]raditional techniques."  (*See* FAC ¶ 70.)[1] Even websites that have been "cleaned" and "fully patched" are susceptible to reinfection "due to MageCart operators becoming more sophisticated in hiding their tracks and applying persistence techniques through backdoors, hidden admin accounts, database 'triggers' and hidden scheduled tasks to reinfect a cleaned system." (*See* FAC ¶ 60.)[2]  Thus, Plaintiffs' own allegations confirm that WMG's websites—even with reasonable and constantly improving security measures—are among the millions that have been the victims of these sophisticated attacks.  (*See id.*)

On the question of whether WMG's security procedures or practices were negligent or

---

[1] *See* FAC ¶ 70 (incorporating and relying on https://securityboulevard.com/2019/11/macys-is-the-latest-victim-of-magecart-dont-be-next/); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 230 (2d Cir. 2016) (district court can consider documents plaintiffs rely on in a complaint on a motion to dismiss).

[2] *See* FAC ¶ 60, incorporating and relying on https://www.trustwave.com/en-us/resources/blogs/spiderlabs-blog/magecart-an-overview-and-defense-mechanisms/.

3

unreasonable, the FAC alleges no plausible facts.  Plaintiffs do not describe how WMG's security measures were, or even could have been, responsible for its websites being "hacked" (*Id.* ¶ 46), or for the "release and disclosure of Plaintiffs' . . . PII ["Personally Identifiable Information"] to third parties" (*Id.* ¶ 263).  Instead, Plaintiffs merely allege in conclusory fashion that WMG "failed to maintain appropriate technological and other systems" (*id.* ¶ 261), reference various security technologies described in articles and advertisements, and cite general guidelines from the Federal Trade Commission ("FTC") and Payment Card Industry ("PCI") standards body.  Plaintiffs do not specifically state or explain how these guidelines support their claims against WMG and do not address the FAC's lack of plausible details as to why WMG's technologies and systems were insufficient to meet WMG's legal obligations in the context of Plaintiffs' transactions.  Indeed, Plaintiffs' allegation that millions of websites have been victims of Magecart attacks that are "nearly impossible" to detect with standard techniques supports the conclusion that WMG's actions were appropriate and reasonable, as WMG took immediate steps to investigate and stop the incident.  (*Id.* ¶¶ 60, 70.)  This is underscored by WMG's incident notification, included in the FAC, which states that "[u]pon discovering the incident," WMG "immediately launched a thorough forensic investigation with the assistance of leading outside cybersecurity experts and promptly took steps to address and correct the issue."  (FAC, Ex. 1 at 2.)  Indeed, Plaintiffs cite an article stating that the type of attack Plaintiffs allege WMG suffered "can go undetected for weeks or even months[.]"  (FAC ¶ 57.)[3]

As to the contractual relationship between the parties, Plaintiffs allege that when they made their purchases, WMG's websites displayed a statement that said, "By placing this order,

---

[3] *See* FAC ¶ 57 (incorporating and relying on https://www.cshub.com/attacks/articles/iotw-worlds-third-largest-music-company-falls-prey-to-magecart-attack).

you agree to our Terms, Conditions and Cancellation Policy." (FAC ¶ 239.) WMG's Terms of Use ("TOU") disclaim liability for any "loss of security of information [Plaintiffs] have provided in connection with [their] use of the site." (*See* TOU, retrieved July 12, 2021, https://www.warnerrecords.com/terms-of-use.)[4]

Without plausible details as to why WMG's security was deficient, Plaintiffs allege that WMG failed to live up to two representations: (1) the statement in WMG's Privacy Policy that it would use "reasonable physical, technical and administrative measures to protect Personal Information," (FAC ¶ 50) and (2) WMG's "use of images of combination locks within the URL of its websites," which Plaintiffs claim represented to customers that their personal information would be "secure" (*id.* ¶¶ 256, 258.) Here too, Plaintiffs make no allegation that these representations were material to their purchases or that they relied on them. Further, the TOU states that "[w]hile we try to maintain the security of the Site, we do not guarantee that the Site or any Third Party Applications will be secure" and puts potential customers on notice that "third parties may make unauthorized alterations to the Site or any Third Party Applications." (*See*

---

[4] Plaintiffs' allegations in the FAC regarding whether the TOU is enforceable are legal conclusions and do not establish that Plaintiffs did not assent to its provisions. (FAC ¶¶ 239-246.) In fact, the Court should infer that Plaintiffs read the TOU based on their allegation that they reviewed statements contained in WMG's Privacy Policy, which is incorporated in the TOU (*Id.* ¶ 248). Further, Plaintiffs' allegations that they all placed orders on WMG websites and that the purchase process included a statement that Plaintiffs agreed to the TOU by placing an order (*Id.* ¶ 239), shows that Plaintiffs are bound by the TOU. Courts have enforced similar TOU clauses under similar circumstances. *See, e.g.*, *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542 CAS (JCx), 2008 WL 4772125, at *1 (C.D. Cal. Sept. 29, 2008) (finding TOU was enforceable because "the 1-800-Flowers website directly links to its Terms of Use, which are prefaced with the statement 'By accessing any areas of the web site you agree to be legally bound, and to abide by, these Terms of Use'"). WMG's TOU should be enforced for the same reason, *i.e.*, because "[Plaintiffs are] encouraged by the design and content of the website and the agreement's webpage to examine the terms[.]" *Corwin v. NYC Bike Share, LLC*, 238 F. Supp. 3d 475, 489 (S.D.N.Y. 2017) (citation omitted).

TOU.)

Plaintiffs also fail to allege that they suffered any harm.  They do not allege that they did not receive their purchases, or that their purchases were defective, and none clearly allege unreimbursed monetary harm.  (FAC ¶¶ 87-220.)[5]  The FAC instead alleges nebulous injuries such as "identity theft," the purported loss of opportunity for Plaintiffs to use their PII, and the lost time and opportunity costs resulting from time spent mitigating speculative future risks of identity theft-related harms.  (*Id.* ¶ 12.)  Plaintiffs further state, without facts, that there is a "continued risk to their PII[.]"  (*Id.*)

Based on these speculative and conclusory allegations, the FAC asserts seven causes of action:  (1) negligence, (2) negligent misrepresentation, (3) unjust enrichment, (4) violation of NYGBL § 349, (5) violation of NYGBL § 350, (6) breach of implied contract, and (7) violation of the California Consumer Privacy Act ("CCPA").  Plaintiffs request that the Court award them damages as well as "equitable relief, including injunctive relief."  (*Id.* ¶ 254.)  The Court should deny Plaintiffs' request and dismiss the FAC in its entirety.

## **LEGAL STANDARD**

Absent Article III standing, the Court does not have subject matter jurisdiction over Plaintiffs' claims pursuant to Rule 12(b)(1).  Plaintiffs bear the burden of alleging an injury-in-fact to establish Article III standing, which is limited to "an invasion of a legally protected interest which is (a) concrete and particularized and actual or imminent, not conjectural or hypothetical[.]"  *Doe v. Quest Diagnostics, Inc.*, No. 15 CIV. 8992 (LGS), 2017 WL 1102663, at

---

[5] Although Plaintiffs Gutierrez, Buck, and Hammett allege their payment information was compromised after purchasing items on WMG's websites (FAC ¶¶ 146, 166, 185, 195), these allegations are too vague and conclusory to state a claim for injury or harm.  As demonstrated in Section I below, Plaintiffs have not alleged any injury-in-fact necessary for Article III standing.

*3 (S.D.N.Y. Mar. 23, 2017) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)) (quotations omitted).  To be concrete, an injury "must actually exist" and be "real" rather than "abstract."  *Id.*

The FAC should also be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  Although a Rule 12(b)(6) motion requires the Court to "accept as true all of the allegations contained in a complaint," that standard "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Allegations are inadequate where a complaint "tenders 'naked assertion[s]' devoid of 'further factual enhancement[,]'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557), and does not allege a factual basis sufficient "to give the defendant fair notice of what the claim is and the grounds upon which it rests."  *Port Dock & Stone Corp. v. Oldcastle Ne., Inc.*, 507 F.3d 117, 121 (2d Cir. 2007) (citing *Twombly*, 550 U.S. at 555).

The *Twombly/Iqbal* standard requires more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do."  *Excevarria v. Dr. Pepper Snapple Grp., Inc.*, 764 F. App'x 108, 109 (2d Cir. 2019) (quoting *Twombly*, 550 U.S. at 555).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Iqbal*, 566 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).  Where plaintiffs have "not nudged their claims across the line from conceivable to plausible, the[ ] complaint must be dismissed."  *Twombly*, 550 U.S. at 570.

As explained below, the generalized and threadbare factual content alleged in the FAC

fails to satisfy these pleading standards as to each of the claims asserted.

## ARGUMENT

### I.     ALLEGATIONS OF REIMBURSED CHARGES AND SPECULATIVE RISK OF FUTURE HARM DO NOT CONFER ARTICLE III STANDING.

Vague allegations of uncertain present and future harm do not satisfy Article III's standing requirements.  The FAC generally asserts three types of alleged harm:  (1) reimbursed fraudulent charges, (2) expenses for preventing speculative future identity theft, and (3) hypothetical future risks.  None is an injury-in-fact that supports Article III standing.

First, allegations of unauthorized charges for which Plaintiffs received reimbursement do not confer standing.  *See Whalen v. Michael Stores Inc.*, 153 F. Supp. 3d 577, 582 (E.D.N.Y. 2015), *aff'd*, 689 F. App'x 89 (2d Cir. 2017) (dismissing data breach claims for lack of standing because plaintiffs failed to allege unreimbursed charges).  Plaintiffs either fail to allege non-reimbursed monetary harm or make vague and conclusory allegations that cannot support standing.

Ten out of the 14 Plaintiffs admit that they were fully reimbursed for allegedly fraudulent charges, and two fail to allege they suffered any fraudulent charges at all.  The below chart summarizes all of the named Plaintiffs' allegations of injury.  Plaintiffs have not alleged any concrete, non-speculative monetary loss caused by WMG's conduct.

| Injury Allegation Deficiencies | Plaintiffs' Allegations |
|---|---|
| No concrete injury alleged. | **Levi Combs** ($197.90 reimbursed; FAC ¶ 90); **Nicholas Cimaglio** ($300.00 reimbursed; FAC ¶¶ 138-139); **Esteban Trujillo** ($86.11 attempted charges declined; FAC ¶ 101); **Susan Cakl** (no unauthorized charges alleged; FAC ¶¶ 117- |

|  | 124); **Ali Gutierrez** ($3,000.00 reimbursed and "approximately $300.00" in "convenience fees and interest charges" from paying apartment rent on a credit card, with no explanation how that was causally connected to WMG's conduct; FAC ¶ 146); **Ashley Foster** ($2,500.00 reimbursed; FAC ¶ 156); **Noah Watts** (all charges reimbursed; FAC ¶ 166); **Alexander Buck** ($2,040.00 of $2,254.00 reimbursed and no affirmative allegation that the remaining $214 was not; FAC ¶ 185); **Linda Stevens** ($240 reimbursed; FAC ¶ 205); **Jadyn Blank** ($90.00 reimbursed; FAC ¶ 215). |
|---|---|
| Unspecified amounts of unauthorized charges that are too nebulous to allege injury. | **Christie Kuhn** ("more than five hundred dollars" unreimbursed, without specificity or explanation why not; FAC ¶ 108); **Jon Hart** (no specific allegations of monetary harm; FAC ¶¶ 173-181); **Courtney Hammett** ("some" charges refunded without specification; FAC ¶ 195). |
| Speculative risk of future harm that does not establish Article III standing. | **Raistlin Beardsley** (purchased "an external drive to hold thousands of unwanted spam and phishing emails[,]" without explanation of how WMG could have caused the receipt of such spam and phishing emails; FAC ¶ 130). |

Second, Plaintiffs' theories of injury based on hypothetical damages such as "the loss of the opportunity [to monetize] how their PII is used" and the "continued risk to their PII" (FAC ¶¶ 12, 253, 264, 278) are too speculative to confer standing.  In *Jantzer v. Elizabethtown*

*Community Hospital*, for instance, the court held that because "Plaintiff was informed that his social security number was not included in the data that was stolen," the alleged data breach did not "create[] an imminent risk of identity theft."  No. 8:19-cv-00791 (BKS/DJS), 2020 WL 2404764, at *4 (N.D.N.Y. May 12, 2020).  Similar to the plaintiffs in *Jantzer,* Plaintiffs in this action do not and cannot allege that any sensitive information, such as social security numbers, has been stolen.  Absent more concrete allegations, Plaintiffs' attempts to plead future risk of harm fail.  *See, e.g.*, *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2211 (2021) ("mere risk of future harm, standing alone, cannot qualify as a concrete harm").

Finally, the alleged time and out-of-pocket expenses that Plaintiffs spent in connection with preventing future identity theft cannot confer standing either.  "Courts have uniformly ruled that the time and expense of credit monitoring to combat an increased risk of future identity theft is not, in itself, an injury that the law is prepared to remedy."  *Shafran v. Harley-Davidson, Inc.*, No. 07 Civ. 01365 (GBD), 2008 WL 763177, at *3 (S.D.N.Y. Mar. 20, 2008).  Plaintiffs also do not plead this category of damages with particularity, as no Plaintiff alleges how much time they spent dealing with these issues, to whom they spoke, or when such conversations may have occurred.  *See Whalen v. Michaels Stores, Inc.*, 689 F. App'x 89, 91 (2d Cir. 2017) (finding that allegations about time lost do not confer standing because plaintiff "pleaded no specifics about any time or effort that she herself has spent monitoring her credit").  Without any requisite alleged injury-in-fact, the FAC should be dismissed.

## II.   THE COURT SHOULD DISMISS THE FAC FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

### A.   Plaintiffs Do Not State a Claim for Negligence Because WMG Did Not Breach Any Duty to Plaintiffs or Harm Them.

Although WMG was a victim of an attack that Plaintiffs' own cited references describe as "nearly impossible" to detect, Plaintiffs allege that WMG was negligent because it did not

prevent the incident.  To allege a claim for negligence, Plaintiffs must demonstrate:  "(1) a duty owed to plaintiff; (2) breach of that duty; and that (3) plaintiff suffered an injury proximately caused by the breach."  *Daly v. Metro. Life Ins. Co.*, 782 N.Y.S.2d 530, 534 (N.Y. Sup. Ct. 2004).  Plaintiffs' negligence claims fall short for multiple reasons:  Plaintiffs do not plead duty, breach or injury, and the claims are barred by the economic loss doctrine.

### 1.   WMG Did Not Have a Special Duty to Stop All Data Breaches in Connection with Routine Online Shopping Transactions.

To plead a duty of care, Plaintiffs must allege that "a special relationship exists between the parties by virtue of the defendant's unique or specialized expertise, or the defendant's special position of confidence and trust with the injured party."  *See Banco Indus. de Venez. v. CDW Direct, L.L.C.*, 888 F. Supp. 2d 508, 512-13 (S.D.N.Y. 2012).  The FAC does not plead such a relationship.

No duty arises from ordinary arm's-length commercial transactions like those between Plaintiffs and WMG.  WMG is not a bank, or a hospital, or an insurance company that collects social security numbers.  The websites at issue sell artist merchandise and music and collect the minimum payment information necessary to facilitate those transactions.  This does not create a "special relationship" whereby WMG owed a duty of care to customers.  "Simply being in business as a seller" is "insufficient to form the basis of a special relationship" needed to plead the requisite special duty of care.  *W. Intermodal Servs. Ltd. v. Singamas Container Indus. Co.*, No. 98 Civ.  8275 (RPP), 2000 WL 343780, at *4 n.4 (S.D.N.Y. Mar. 31, 2000).  And while Plaintiffs allege that WMG "assumed legal and equitable duties" because it collected their information (FAC ¶ 7), "provid[ing] personal information" is not "outside the scope of what is routine" between an online store and its customers, so "the interactions do not suggest any kind of special relationship of trust and confidence."  *See Fero v. Excellus Health Plan, Inc.*,

236 F. Supp. 3d 735, 760, 774 (W.D.N.Y. 2017), *on reconsideration*, 304 F. Supp. 3d 333

(W.D.N.Y. 2018).  Additionally, Plaintiffs cannot allege that WMG had a duty to them because

of WMG's TOU disclaimer for any "loss of security of information [Plaintiffs] have provided in

connection with [their] use of the site."  TOU; *see BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d

486, 508 (S.D.N.Y. 2013) (dismissing negligence claim where disclaimer precluded duty

allegation).  Without any required duty of care, Plaintiffs' negligence claim should be dismissed.

## 2. Plaintiffs Cannot Rely on the Occurrence of a Security Incident Alone to Support the Element of Breach.

The FAC also fails to allege any breach of an alleged duty to Plaintiffs.  Instead, the FAC

improperly assumes that, since WMG was the victim of a security incident, the incident must

have resulted from WMG's failure to maintain adequate security measures.  (*See* FAC ¶¶ 12,

53.)  As courts have repeatedly noted, such conclusory allegations are not sufficient to state a

claim.  *See Willey v. J.P. Morgan Chase, N.A.*, No. 09 Civ. 1397 (CM), 2009 WL 1938987, at *4

(S.D.N.Y. July 7, 2009).  In *Willey* the plaintiff's allegations that the defendant was "negligent in

failing to maintain reasonable procedures designed to protect against [] unauthorized access"

were deemed a "formulaic recitation of the elements" of negligence and therefore insufficient.

*Id.* (citation omitted).  Plaintiffs have made similarly insufficient allegations here.

Plaintiffs' allegations that WMG did not respond in a "timely manner" or that its

"encryption," "checkout system," or "JavaScript" practices were inadequate are also speculative

and conclusory.  (FAC ¶¶ 251, 13, 68, 69.)  The sole plausible fact Plaintiffs plead regarding

WMG's conduct is that WMG issued a breach notification letter.  But this fact alone is

insufficient to allege that WMG breached any duty of care to Plaintiffs.  If it were otherwise,

then every issued breach notification would support a *prima facie* claim for negligence—which

is not the law.  *See, e.g.*, *Razuki v. Caliber Home Loans, Inc.*, No. 17CV1718-LAB (WVG),

2018 WL 6018361, at *1–2 (S.D. Cal. Nov. 15, 2018).  In *Razuki*, the court held that claims alleging that the defendants "knew of higher-quality security protocols available to them but failed to implement these measures . . . fail[] because [they are] precisely the type of 'threadbare' claim *Iqbal* warns of."  *Id.* (citations and quotation marks omitted).  Here, Plaintiffs merely cite articles discussing existing security technologies, including security product advertisements that, unsurprisingly, claim their product is the silver bullet against Magecart attacks.  (*See*, *e.g.*, FAC ¶ 60).  These articles, however, do not concern *WMG's* conduct and do not support Plaintiffs' threadbare conclusion that WMG was negligent or that its security measures were unreasonable.

Plaintiffs' amended allegations referring to FTC and PCI standards and guidelines are unavailing.  (FAC ¶¶ 34-45.)  These materials only address general security issues and do not specifically address Magecart attacks.  Citation to such general regulatory or industry guidance cannot give rise to a negligence claim.  *See, e.g.*, *Clarex Ltd. v. Natixis Sec. Am. LLC*, No. 12 CIV. 7908 PAE, 2013 WL 2631043, at *6 (S.D.N.Y. June 11, 2013) (dismissing negligence claim and noting that "fundamentally, as a matter of law, a trade association's recommendations do not create new legal duties for its members") (citing cases); *Razuki, supra* (dismissing amended complaint basing claims on FTC security publications); *Pica v. Delta Air Lines, Inc.*, No. CV 18-2876-MWF (EX), 2018 WL 5861362, at *9 (C.D. Cal. Sept. 18, 2018) (negligence claim based on FTC's authorities "barred").  And as noted above, WMG, upon "discovering the incident," which Plaintiffs allege many fail to do, "promptly took steps to address and correct the issue."  (FAC, Ex. 1 at 2.)  Plaintiffs' claims make the conclusory leap from WMG merely providing notice of an incident to an inference that WMG, the victim of the alleged security breach, must have deviated from a standard of care.  Allowing such claims to proceed would open the floodgates to arguments that any notification of an intrusion by a victimized website

creates a *prima facie* negligence claim.  This is not the law.  Thus, while WMG does not owe Plaintiffs a duty in this context, Plaintiffs' failure to plead any breach also warrants dismissal.

### 3.     Plaintiffs' Allegations of Reimbursed Charges and Speculative Future Risk Are Not Sufficient to Support an Injury.

Plaintiffs' harm allegations are too vague and speculative to state a negligence claim, just as they are insufficient to support an injury-in-fact for Article III standing.  (*See* Section I, *supra*.)  Alleged injuries of lost time and future risk of harm are also too speculative to satisfy the damages element of a negligence claim.  *See Corona v. Sony Pictures Entm't, Inc.*, No. 14-CV-09600 RGK EX, 2015 WL 3916744, at *4-5 (C.D. Cal. June 15, 2015) (alleged "future harm or an increased risk in future harm" and "lost time" insufficient to support negligence claim).

### 4.     Plaintiffs' Claims Are Barred by Their Contract with WMG and the Economic Loss Rule.

Plaintiffs' negligence claim also fails for the independent reason that Plaintiffs' negligence allegations are contractual in nature.  Indeed, Plaintiffs acknowledge the contractual relationship between the parties, as Plaintiffs allege that they had to agree to WMG's TOU in order to place an order (FAC ¶ 239), and that they did, in fact, review WMG's Privacy Policy, which is incorporated in the TOU.  (*Id.* ¶ 248.)  Because the parties maintained a contractual relationship, the economic loss rule precludes Plaintiffs' recovery in tort.  *See Ambac Assur. Corp. v. U.S. Bank Nat'l Ass'n.*, 328 F. Supp. 3d 141, 157-59 (S.D.N.Y. 2018) (citation omitted).

Here, Plaintiffs allege the existence of an express contract with WMG under the TOU and Privacy Policy.  (*See* n.4, *supra*.)  Plaintiffs' negligence allegations concern their conclusory claims that WMG breached its agreement with them for the purchase of goods by not stopping a data security incident that even Plaintiffs admit was "nearly impossible" to detect.  (*See, e.g.*, FAC ¶ 248 (referring to WMG's Privacy Policy).)  Because this claim arises from the parties' contract, it is barred by the economic loss rule.  *Cruz v. TD Bank, N.A.*, 855 F. Supp. 2d 157, 178

(S.D.N.Y. 2012), *aff'd and remanded*, 742 F.3d 520 (2d Cir. 2013) (holding that the economic loss rule precludes plaintiffs from recovering under a negligence claim that "actually lie[s] in the nature of breach of contract as opposed to tort" (citation omitted)).

      **B.**     **Plaintiffs Fail to State a Claim for Negligent Misrepresentation Because Plaintiffs Do Not Plead Actionable Representations and Reliance.**

Plaintiffs' negligent misrepresentation claims fail for the same reasons that the negligence claims fail—WMG had no special duty to Plaintiffs (and did not breach any such duty), and the alleged harm is too vague and speculative. Further, Plaintiffs fail to make any factual allegations beyond parroting the legal elements of negligent misrepresentation—namely, that WMG "made a false representation" that it "should have known was incorrect," that WMG knew Plaintiffs desired the information for a "serious purpose" and "intended to rely and act upon it," and that Plaintiffs "reasonably relied on [the alleged misrepresentation] to [their] detriment." *BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d at 508 (citation omitted). Negligent misrepresentation claims must also be pled with particularity pursuant to Fed. R. Civ. P. 9(b)— which the FAC fails to do. *See Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 578-80 (2d Cir. 2005) (applying heightened pleading standards to negligent misrepresentation claim) (internal quotations and citations omitted).

      **1.**     **WMG's Lock Image and Privacy Policy Statements Are Not Definite Enough to Support a Negligent Misrepresentation Claim.**

Plaintiffs do not allege that WMG made any definite or specific statement to support a negligent misrepresentation claim, as they merely allege that "the image of a combination lock displayed on the upper left corner of the page" represented to customers that their transactions would be "secure." (FAC ¶¶ 35, 256.) A statement must be sufficiently definite and specific to establish liability. *See Zaccagnino v. Nissan N. Am., Inc.*, No. 14-CV-3690 (LLS), 2015 WL

3929620, at *4 (S.D.N.Y. June 17, 2015) ("general" statements do not satisfy the particularity requirement).  Here, the alleged pictorial representation does not support a claim because it is not a "specific representation of fact or promise."  *See Murphy v. Twitter, Inc.*, 274 Cal. Rptr. 3d 360, 374-75 (Ct. App. 2021).  Neither are WMG's general statements in its Privacy Policy.  *See id.* (finding that representations in general terms of service were insufficient to state a claim). *see also In re GM LLC Ignition Switch Litig.*, No. 14-MD-2543 (JMF), 2016 WL 3920353, at *26 (S.D.N.Y. July 15, 2016) (finding "general statements regarding quality and safety" inactionable).  Plaintiffs' failure to allege how the pictorial representation of a lock or general statements regarding privacy misled customers as to WMG's security measures requires dismissal.  *See Green v. Covidien*, No. 18 Civ. 2939, 2021 WL 1198833, at *6 (S.D.N.Y. Mar. 30, 2021) (dismissing negligent misrepresentation claim "[b]ecause the SAC does not plead facts demonstrating that Defendant's statements were false and misleading[.]").

### 2.    Plaintiffs Fail to Allege That They Reasonably Relied on Security-Related Representations.

Plaintiffs also do not allege that they reasonably relied on any of the alleged representations they describe.  In fact, Plaintiffs do not allege any actual reliance—let alone reasonable reliance.  Plaintiffs allege the image of the lock "exist[ed]," but no Plaintiff alleges they saw the image or relied on it in deciding to make an online purchase.  (FAC ¶ 36.)  This is another basis for dismissal.  *See DeBlasio v. Merrill Lynch & Co.*, No. 07 Civ 318(RJS), 2009 WL 2242605, at *24 n.15 (S.D.N.Y. July 27, 2009) (dismissing negligent misrepresentation claim because plaintiffs "failed to specifically allege that they actually read and relied on" the purported misrepresentations); *Tuosto v. Philip Morris USA Inc.*, No. 05 Civ. 9384 (PKL), 2007 WL 2398507, at *9 (S.D.N.Y. Aug. 21, 2007) (complaint did "not allege that [the plaintiff] saw . . . any specific . . . advertisement, [but] simply that [the defendant's] advertisements were widely

circulated and intended to mislead").  Regarding the alleged representations in WMG's Privacy Policy, Plaintiffs do not allege beyond conclusory statements that those representations affected their decision to shop for artist merchandise and music.

Plaintiffs fail to allege that that their reliance was reasonable.  To determine whether Plaintiffs reasonably relied on a statement, courts consider:  "(1) whether the defendant 'held or appeared to hold unique or special expertise'; (2) whether there was 'a special relationship of trust or confidence' between the parties; and (3) 'whether the speaker was aware of the use to which the information would be put and supplied it for that purpose.'"  *DeBlasio*, 2009 WL 2242605, at *102–03 (citing *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996)).  Here, Plaintiffs do not allege that WMG, a music company, appeared to hold any special expertise in cyber security.  Nor do they claim that the routine online purchase of goods gave rise to a special relationship of trust and confidence, particularly where Plaintiffs did not provide social security numbers or sensitive health or financial information.  (*See* Section II(A)(1), *supra*); *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 188 (2d Cir. 2004) ("[W]here . . . a 'special relationship' is nowhere pled, . . . a claim for negligent misrepresentation is dismissible under Rule 12(b)(6).").  And even if Plaintiffs had alleged such a relationship, Plaintiffs cannot plausibly allege that WMG was aware that customers would rely on its general statements and image of a lock to mean that WMG had guaranteed it would stop an attack that Plaintiffs themselves admit is "nearly impossible" to identify.

Finally, WMG's TOU further precludes reasonable reliance by Plaintiffs, as Plaintiffs cannot "justifiably rely on a misrepresentation that is specifically disclaimed in an agreement."  *See BNP Paribas Mortg. Corp.*, 949 F. Supp. 2d at 511 (citation omitted); *see also* TOU (noting that "[w]hile we try to maintain the security of the Site, we do not guarantee that the Site or any

17

Third Party Applications will be secure" and that "third parties may make unauthorized alterations to the Site or any Third Party Applications"). For the foregoing reasons, the Court should dismiss Plaintiffs' negligent misrepresentation cause of action for failure to state a claim.

**C.    Plaintiffs' Implied Contract Claim Fails Because They Do Not Sufficiently Allege Facts to Support the Existence of an Implied Contract, a Breach of Such Contract, or Damages.**

Unable to assert a contractual claim due to the TOU's specific limitations, Plaintiffs attempt to invent an implied contract between them and WMG. Yet Plaintiffs' breach of implied contract claim fails because they have not alleged (a) WMG entered into an implied contract requiring it to safeguard Plaintiffs' personal information or (b) a breach of any implied contract.[6]

No implied contract exists between WMG and Plaintiffs. While Plaintiffs make conclusory allegations that WMG "[t]hrough the operation of its e-commerce platforms" made an "implied promise to maintain the PII provided by Plaintiffs . . . safe and secure" (FAC ¶ 266), Plaintiffs do not and cannot allege there was a "meeting of the minds" regarding what measures would be taken with respect to Plaintiffs' personal information. *See Venezia v. Luxoticca Retail N. Am. Inc.*, No. 12 Civ. 4467 (RJS), 2015 WL 5692146, at *16 (S.D.N.Y. Sept. 28, 2015) (requiring a "meeting of the minds as to the material terms of an implied contract" (citation and quotation marks omitted)). Plaintiffs' conclusory allegations that WMG "knew" that Plaintiffs would rely on a picture of a lock and that Plaintiffs' (unpled) reliance was "justifiabl[e]" (FAC ¶¶ 259-60) do not satisfy their pleading obligations. *See Hammond v. The Bank of N.Y. Mellon Corp.*, No. 08 Civ. 6060 (RMB) (RLE), 2010 WL 2643307, at *37 (S.D.N.Y. June 25, 2010).

Further, Plaintiffs' allegations concerning WMG's representations of security in its

---

[6] To state a claim for breach of implied contract, a plaintiff must plead all elements of a contract claim: "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Balk v. N.Y. Inst. of Tech.*, 683 F. App'x 89, 95 (2d Cir. 2017) (summary opinion) (citation omitted).

18

Privacy Policy or its lock image refer at best to "broad statements of company policy" that "do not generally give rise to contract claims." *Trikas v. Universal Card Servs. Corp.*, 351 F. Supp. 2d 37, 46 (E.D.N.Y. 2005).  Absent allegations of a "clear" implied agreement, the Court should dismiss Plaintiffs' implied contract claim.  *Hudson & Broad, Inc. v. J.C. Penney Corp., Inc.*, 553 F. App'x 37, 39 (2d Cir. 2014) ("no legally enforceable contract" exists where the agreement is not "certain" enough (citation omitted)).

Not only do Plaintiffs fail to allege an implied contract, but they also fail to offer non-conclusory allegations that WMG breached any such agreement.  The FAC merely makes a threadbare allegation that WMG "fail[ed] to keep the PII provided by Plaintiffs . . . safe and secure."  (FAC ¶ 268.)  As explained above in section II(A)(2), the allegation that the sender of an incident notification may be found negligent by virtue of sending the notification is too conclusory to properly assert a breach of any purported obligations on WMG's part.  Thus, because Plaintiffs "fail[] to identify which provision of the purported contract required" particular security measures that were not followed, the Court should dismiss the implied contract cause of action.  *Smahaj v. Retrieval-Masters Creditors Bureau, Inc.*, 131 N.Y.S.3d 817, 826 (N.Y. Sup. Ct. 2020) (dismissing on this basis).

Finally, Plaintiffs' failure to plead damages and harm (sections I; II(A)(3), *supra*) precludes their ability to state breach of implied contract claim.  *ERE LLP v. Spanierman Gallery, LLC*, 942 N.Y.S.2d 472, 473–74 (2012) ("In the absence of any allegations of *fact* showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint[.]") (emphasis in original).

### D.  Plaintiffs Fail to State a NYGBL Claim Because WMG Did Not Make Misleading Statements or Tie Security to Its Advertising, and Because Plaintiffs' Purchases Were Not Defective.

Plaintiffs assert two causes of action for violations of NYGBL under largely the same

theories as their negligent misrepresentation and breach of implied contract claims.  These claims also fail under the NYGBL for similar reasons.

> **1.      Plaintiffs Do Not Allege Materially Misleading Statements, as Required by NYGBL §§ 349 and 350.**

Plaintiffs do not state a claim for violations of NYGBL §§ 349 and 350 because they do not allege that WMG made any representations that were "misleading in a material way," or that Plaintiffs "suffered injury as a result of the deceptive act." *Bildstein v. MasterCard Int'l Inc.*, 329 F. Supp. 2d 410, 413-14 (S.D.N.Y. 2004) (requiring allegations of "materially deceptive conduct" on which Plaintiffs "relied to their detriment").

First, Plaintiffs fail to allege that WMG made a misleading representation.  Plaintiffs' allegation that WMG stated it would "use[] reasonable physical, technical and administrative measures to protect Personal Information" (FAC ¶ 287) cannot support a claim, as it constitutes non-actionable "puffery." *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 52 n.14 (S.D.N.Y. 2019).  WMG's clear disclaimers in its TOU establish that no reasonable customer could have been misled.  *See Shovak v. Long Island Com. Bank*, 858 N.Y.S.2d 660, 660 (N.Y. App. Div. 2008) (dismissing a § 349 claim because "there was no materially misleading statement" where the risk was "fully disclosed to the plaintiff").  Courts have rejected NYGBL claims involving similar general statements in privacy policies.  *See, e.g.*, *Abdale v. N. Shore-Long Island Jewish Health Sys., Inc.*, 19 N.Y.S.3d 850, 850 (N.Y. Sup. Ct. 2015) ("statements allegedly made by defendants in the privacy policy and online notices . . . [did] not constitute an unlimited guaranty that [plaintiffs'] information could not be stolen or that computerized data could not be hacked.").  Here too, WMG's statement that it would use "reasonable" "measures" to protect Plaintiffs' information does not constitute an "unlimited guaranty" that it would never suffer any security incident—particularly one that, by Plaintiffs' allegations, is led by "operators becoming

20

more sophisticated in hiding their tracks and applying persistence techniques[.]"  (FAC ¶ 60.)

Second, Plaintiffs fail to allege that WMG's purported misrepresentations were material. Plaintiffs do not allege that WMG's statements regarding its data security practices had any effect on their decisions to make purchases on WMG's websites.  Thus, their NYGBL claims should be dismissed.  *See Braynina v. TJX Cos., Inc.*, No. 15 Civ. 5897 (KPF), 2016 WL 5374134, at *1, 5 (S.D.N.Y. Sept. 26, 2016) (requiring that a "material deception" "affect[s]" consumers "choice of product"); *see also Tasini v. AOL, Inc.*, 851 F. Supp. 2d 734, 744 (S.D.N.Y. 2012), *aff'd*, 505 F. App'x 45 (2d Cir. 2012) (dismissing § 349 claim where plaintiffs failed to allege that the practice of withholding page-view data had any effect on their actions).

## 2.      Plaintiffs' NYGBL § 350 Claim Fails to Allege Advertising.

Plaintiffs also fail to state a plausible claim under NYGBL § 350, which follows the same analysis as a § 349 claim but requires the additional element of deceptive advertising.[7]  "In order to state a claim under [NYGBL] § 350, the plaintiffs must" allege that WMG engaged in "advertising" that "was misleading in a material respect and that it caused the plaintiffs' injury." *Anunziatta v. Orkin Exterminating Co.*, 180 F. Supp. 2d 353, 362 (N.D.N.Y. 2001) (citation omitted).  Such an advertisement must be part of an "organized campaign to penetrate the relevant market."  *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) (internal citations omitted).[8]  Yet, the FAC points to no organized campaign by WMG to advertise its security in the market to promote artist merchandise and music sales, only

---

[7] "The standard for recovery under § 350, while specific to false advertising, is otherwise identical to § 349."  *Braynina*, 2016 WL 5374134, at *4 (citation omitted).

[8] The Second Circuit in *Fashion Boutique* applied the Lanham Act's standard for "advertising", which is the "same standard[]" for evaluating whether something is "advertising" under NYGBL § 350.  *In re Keurig Green Mountain Single-Serve Coffee Antitrust Litig.*, 383 F. Supp. 3d 187, 251 (S.D.N.Y. 2019).

21

vaguely alleging that WMG's conduct was "directed to consumers."  (FAC ¶ 299.)  This is fatal

to a claim under NYGBL § 350.  *See Cline v. TouchTunes Music Corp.*, 211 F. Supp. 3d 628,

637 (S.D.N.Y. 2016) (dismissing § 350 claim because the complaint "contained no allegations of

any specific advertising by [defendant]").

### 3.	Both NYGBL Claims Fail Because Plaintiffs Received the Full Value of Their Purchase.

"[A]n actual injury claim under §§ 349 and 350 typically requires a plaintiff to allege

that, on account of a materially misleading practice, she purchased a product and did not receive

the full value of her purchase."  *Braynina*, 2016 WL 5374134, at *10 (citation omitted).  Here,

Plaintiffs allege that they did receive their purchases as expected.  (FAC ¶¶ 14-27.)  Plaintiffs

failure to allege any actionable injury under NYGBL §§ 349 and 350 requires dismissal.

### E.	Plaintiffs' CCPA Claim Fails Because No Social Security Numbers (or Similarly Sensitive Information) Were Compromised, and There Is No Basis to Claim That WMG's Security Was Unreasonable.

The CCPA's limited private right of action applies ***only*** when a statutorily defined subset

of a California resident's personal information "is subject to an unauthorized access and

exfiltration, theft, or disclosure" as a result of a party's violation of the duty to implement and

"maintain reasonable security procedures and practices appropriate . . . to protect the personal

information[.]"  Cal. Civ. Code § 1798.150.  Plaintiffs' claims do not fall within the scope of this

limited private right of action.

First, Plaintiffs fail to allege that the information they claim was compromised constitutes

actionable "personal information" as defined by the CCPA.  The CCPA's private right of action

section, § 1798.150, specifically adopts a narrow definition of "personal information" that covers

only an individual's first name (or first initial) and last name *combined with* one or more of the

following:  (1) social security number; (2) driver's license number or California identification-

card number; (3) account number or debit or credit card number ***in combination with the***
***security code, access code or password that permits access to that financial account***; and
(4) specific medical or health information.  Cal. Civ. Code § 1798.81.5(d)(1)(A) (emphasis
added).

Plaintiffs' allegations do not satisfy the CCPA's clear definition of personal information.
To state a CCPA claim, Plaintiffs must allege that their social security numbers or other
information that would enable access to their financial accounts (such as an online account
access code or password) were compromised.  *See Gardiner v. Walmart Inc.*, No. 20-cv-04618-
JSW, 2021 WL 2520103, at *3 (N.D. Cal. Mar. 5, 2021) (dismissing CCPA claim for failing to
"allege the disclosure of a credit or debit card or account number, and the required security or
access code to access the account").  The FAC alleges only that compromised information
"included full names, email addresses, telephone numbers, billing addresses, shipping addresses,
payment card numbers, payment card CVV security codes, and payment card expiration dates."
(FAC ¶ 6.)  This is notably missing any allegation of something that would enable an attacker to
access Plaintiffs' payment accounts using a password or social security number.  A credit card
CVV code, without more, is not enough.   *Gardiner*, 2021 WL 2520103, at *3 ("a credit card
number alone may not have significant value to cause harm.")  Nor does any Plaintiff allege that
they suffered undetected fraud or lost control of or access to their accounts.

Moreover, Plaintiffs do not allege, beyond parroting the statute and pointing to the
existence of advisory and industry guidance, that WMG's security was deficient.  (*See* FAC
¶ 309 (alleging without plausible basis that WMG violated "its duty to implement and maintain
reasonable security procedures and practices").)  Just as Plaintiffs' conclusory allegations of
breach are insufficient to support their claim for negligence or breach of implied contract, the

FAC does not state a claim for CCPA violations.  *See, e.g.*, *Razuki*, 2018 WL 6018361, at *1-2.

Plaintiffs' theory hinges on the assumption—with no plausible basis—that because WMG issued

a breach notification, its security was deficient.  (*See* FAC ¶¶ 48-50.)  That is not enough to

establish liability under the CCPA, as it would read the reasonable security language out of the

statute and make every company victimized by a breach that issued an incident notification liable

under the CCPA's private right of action—which is not the law.  *See Maag v. U.S. Bank, Nat'l*

*Ass'n*, No. 3:21-cv-00031-H-LL, ECF No. 25 (Order Granting Def.'s Mot. to Dismiss) at 3 (S.D.

Cal. Apr. 8, 2021)[9] (conclusory pleading that defendant did not "implement and maintain

reasonable security procedures and practices," "failed to effectively monitor its systems for

security vulnerabilities," and had "lax security" was insufficient to state a CCPA claim).  Thus,

the Court should dismiss Plaintiffs' CCPA cause of action for failure to state a claim.

> **F.     Plaintiffs' Duplicative Unjust Enrichment Claim Fails Because
> Plaintiffs Do Not Allege That They Did Not Receive the Full Value of
> the Goods They Purchased from WMG's Websites.**

Plaintiffs do not plead, as required, that WMG "benefited" at "plaintiffs' expense" or that

"equity and good conscience require restitution."  *Tasini*, 851 F. Supp. 2d at 739-40.  Plaintiffs

only allege that they "should have been entitled to have [WMG] protect their PII with adequate

data security."  (FAC ¶ 271.)  But Plaintiffs do not allege that they failed to receive the goods

they purchased or that the parties to the purchase transaction agreed that a specific portion of

Plaintiffs' payment would cover securing their personal information, which is fatal to their claim.

*See In re SuperValu, Inc.*, 925 F.3d 955, 966 (8th Cir. 2019) ("Because [Plaintiff] does not allege

that any specific portion of his payment went toward data protection, he has not alleged a benefit

conferred in exchange for protection of his personal information nor has he shown how

---

[9] The Court can take notice of this ruling.  *See In re Howard's Express, Inc.*, 151 F. App'x 46, 48
(2d Cir. 2005) ("[W]e are empowered to take judicial notice of public filings and do so here.").

[Defendant's] retention of his payment would be inequitable.").  Plaintiffs concede they received the goods for which they made payments, so their unjust enrichment claims should be dismissed.

Plaintiffs' subjective belief that WMG *should* have allotted some of the payment made for music and artist merchandise to data security (FAC ¶ 273) does not support a claim for unjust enrichment or restitution.  *See In re JetBlue Airways Corp. Privacy Litig.*, 379 F. Supp. 2d 299, 330 (E.D.N.Y. 2005) (failure to allege that "JetBlue obtained any benefit that rightfully belonged to them" demonstrated that equity and good conscience did not require restitution).

Plaintiffs' unjust enrichment claim is a mere restatement of their claims for negligence, negligent misrepresentation, breach of implied contract, and violation of NYGBL and the CCPA. (*See* FAC ¶¶ 270–280.)  For this additional reason, Plaintiffs' unjust enrichment claims fail.  *See, e.g.*, *Sitt v. Nature's Bounty, Inc.*, No. 15-CV-4199 (MKB), 2016 WL 5372794, at *18 (E.D.N.Y. Sept. 26, 2016) (dismissing unjust enrichment claim as duplicative of NYGBL §§ 349, 350 claims); *Digizip.com, Inc. v. Verizon Servs. Corp.*, 139 F. Supp. 3d 670, 682–83 (S.D.N.Y. 2015) (dismissing unjust enrichment claim as duplicative of breach of contract claim because "unjust enrichment is not a catchall cause of action to be used when others fail" (citation omitted)).

Plaintiffs' thin and duplicative allegations are fatal to their claims of unjust enrichment and for restitution.  *See Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 472 (2011) ("Without sufficient facts, conclusory allegations that fail to establish that a defendant was unjustly enriched at the expense of a plaintiff warrant dismissal" (citations omitted)).

## **CONCLUSION**

For the foregoing reasons, the Court should dismiss the FAC in its entirety under Rule 12(b)(1) for failure to allege Article III standing, and Rule 12(b)(6) for failure to state a claim.

Dated: October 1, 2021

Respectfully submitted,

 /s/ Jessica Kaufman

Jessica Kaufman
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Email:  jkaufman@mofo.com
Telephone:  212.468.8000
Facsimile:  212.468.7900

Tiffany Cheung (*Pro hac vice*)
Michael Burshteyn (*Pro hac vice*)
Meredith Angueira (*Pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Email:  tcheung@mofo.com
Email:  mburshteyn@mofo.com
Email:  mangueira@mofo.com
Telephone:  415.268.7000
Facsimile:  415.268.7522

*Attorneys for Defendant*
*WARNER MUSIC GROUP CORP.*

sf-4524349